I'm going to go ahead and open it up to questions. Councillor Groombridge, you've reserved two minutes of your time for rebuttal? Yes, Your Honor. Okay. We're ready when you are. Thank you. Good morning, Your Honors. So I want to start with the estoppel issue. And in our view, that turns on whether one sentence, or more specifically half of one sentence, in the prosecution of the application that led to the 707 patent can fairly be read to be an independent argument. But that half sentence is pretty particular, isn't it? I'm not sure. Even the word particular is used in that half sentence. It uses the word particular, and the question then is, is that a separate argument for patentability, fairly read in the context of the prosecution history? And in our view, the argument is no. The answer to that is no. The reason that I would say that is this. Are you focusing on page 182? Correct, Your Honor. Exactly. And the sentence reads, no combination of sorts is taught nor suggested in the Holtz et al. patent. Nor is the particular, with emphasis, combination of sorts recited in the pending claims taught nor suggested in this reference. And in our view, the estoppel, if there be one, has to turn on that, the second half of that sentence. Is the sentence prior to that sentence also relevant? I think that it's relevant in the sense that what is going... Page are you on? I'm on appendix page 182, Your Honor. 182, okay. And this is the heart of the issue, 182, and we would suggest carrying over to the top of 183. So what is going on in this prosecution? There are two rejections and two responses to the rejections. This is the first of the two responses. What is going on is the examiner has said, I see the Holtz reference. That discloses everything in your claims. And it discloses a certain range of sorts. The examiner identifies eight sorts. And the examiner says, this is an obviousness rejection. It's not anticipation. I think that it would be obvious to pick from that list of eight sorts, a two, a pair, and use those. And in that case, I'd have your invention. And the fair reading of what is everything that's going on in this prosecution is the applicant is coming back and saying, no, Holtz does not disclose a combination. Nothing in the prior art discloses a combination. And so what is going on here is that's why they say, Judge Stolt, applicants point out that the pending claims recite a particular combination of sorts with emphasis on combination. And then they go on and say, no combination of sorts is taught in Holtz, nor is the particular combinations taught in Holtz. And to us, that second part of the sentence isn't an independent argument. It's a necessary corollary. If the first part is true, Holtz teaches no combinations. The second part is necessarily true also. And when we go on and we drop down, it seems to me like you would have a stronger argument if you were distinguishing Holtz just because it didn't say use two and yours used two. And this were just exemplary. And your claims didn't have specific combinations. But you went on and not just used those examples in the prosecution history as examples. You put those three specific combinations in the claims. And so when you read that in combination with saying, why isn't it right to read it, the prosecution here is saying, we're distinguishing over Holtz because not only do we use two, we use these three specific pairings of two. I think the reason why a fair reading of why do these three get put into the claims goes back to the parent application where there's a restriction requirement, where the patent office calls out five pairs of claims and says, you've got to pick one. We're restricting this. They pick one, a different one, citrate phosphate, and prosecute that. They reserve their rights, as is typical when there's a restriction requirement. And then they come back and they dump in the remaining ones that the patents had called out, that the PTO had called out. For whatever reason, and I don't know the answer, they picked three, not four of the five that were left over. Three of the four, not all four of the ones that were left over. Put those in a claim, and that's how come they end up in this claim. It didn't also, though, there was some preserving of the ability to claim them generically, right? There's language in the parent that says we reserve our rights to present claims to specific species if a generic claim is found allowable. And was a generic claim presented or found allowable? A generic claim was never presented and thus never found allowable in the parent application. Why was it not ever presented? I don't know. There was originally a generic claim with limitations that were different from the ones that in some ways that could be important. That claim was amended to recite the citrate phosphate pair in response to the restriction requirement. And then that was prosecuted after it issued. They never came back and presented a generic claim in the parent case. And in our view, what they were doing when they filed this, it is a genus because it's three pairs. It's a small genus, but it's a genus. And they presented it here, presumably saying, is the patent office going to issue another restriction requirement and tell me I have to break this into three parts? That didn't happen. And then they continued prosecuting this small genus and got an allowance. But in our view, a fair reading, and to Judge Hughes' question, of the entire argument in the prosecution of the 707 patent is Holtz does not disclose combinations. So after the sentence that everyone focuses on, two sentences later it says, the claimed subject matter is directed to the use of combinations of salts that increase the dynamic capacity of the hit column. There is no description or suggestion in Holtz for the use of any combinations of salts to increase the dynamic capacity of a hit. And everything else that happens in this prosecution is based on that. It's never, if you think about it, an independent argument in our view would be to say, first argument, Holtz doesn't disclose combinations. Second argument, even if you find that Holtz does render obvious combinations, the particular combinations we're claiming are still not obvious. That second argument is never presented. And it's not a fair reading of this prosecution to say that that was what was argued. The argument always stands or falls on Holtz does not disclose any combinations. Nobody in the art disclosed combinations because nobody understood that using a pair of salts could have an effect on dynamic capacity. Are you saying that these two arguments go together and therefore the estoppel doesn't apply because it's not a separate reason for distinguishing the pair? Correct, Your Honor. And what I'm saying is that this particular half sentence, of course, with the benefit of hindsight, it's unfortunately worded. And I think that's why we're standing here. But fairly read, it's not saying, there are two reasons why I'm different from Holtz. Fairly read this prosecution, and you've got to look, I think, at both, certainly at this entire response to an office action. And we would submit also what happened thereafter. That fairly read, the argument is never, patentability is based on the fact that my particular combinations, these three pairs of salts are non-obvious. Patentability is based on the fact that using a pair of salts is non-obvious. One of the problems I'm having with your argument is that you keep on referring to a half sentence. But I happen to see it in this on pages A182 through 183 three times. So there's the first sentence is on page 182 before the sentence you're relying on. Then there's the sentence you're focusing on. And then on page A183, at the end of the first paragraph, it says, use of this particular combination of salts greatly improves the cost effectiveness of commercial manufacturing, da, da, da. So I see it in there three times. Why do you think my reliance on these other sections isn't? I may have missed the second one, Your Honor, and I apologize. Could you just, what was the second one that you saw on pages 182 to 183? The second one on page 182 is the one that you've been referring to. Okay, yes. Then what's the first one? The first one is a sentence that precedes that. Yes, and I would say that what it's talking about, there's a reason why combination is emphasized there. In other words, fairly red, this entire paragraph is saying. But it does have particular in it. It has the word particular in it. It's not emphasized. Right, it has the word particular in it. But then it goes, it says, no combination of salts is taught nor suggested in Holtz. And what I take, what I think a fair reading of this, and if we come over to the top of page 183, it talks about the use of dual salts to increase dynamic capacity. And then the third place that Your Honor referred to talks about the improvement resulting from the use of dual salts. But it says use of this particular combination of salts. Yes, and that's a quotation from the inventor declaration. Where she has submitted, this is by way of an example. And what they're doing is saying, and this is, I think, what the district, the chief district judge found in the footnote in the opinion of saying, that inventor declaration cannot fairly be read in the way that the magistrate judge had read it in the report and recommendation. What the inventor is, what she is saying there is, here's an example of a particular combination that results in dramatic savings. But it is merely an example. The particular combination she's referring to is saying, if I'm going to give an example, it is necessarily a specific combination. And so that's what we would say, look, a fair reading of this. Particularly if you then look at the subsequent office action, where the arguments are presented again, but in different words. Is Holtz doesn't disclose, and this is appendix 162 to 161. Holtz doesn't disclose a combination of salts. And it doesn't disclose enhancing dynamic capacity through using a combination of salts. Where are you, I'm sorry, could you point out to me where you are in 162? Yes, so the, for example, the last full paragraph, the last sentence of that, which is most of the way to the bottom. Holtz simply does not disclose, suggest or contemplate any steps involving a combination of two salts for any purpose whatsoever. And then the sentence. Is it A162? A160. Oh, thank you. That's okay, thank you. And then the sentence that spans the bottom of 160, 160 to the top of 162, saying nobody in the prior art had disclosed dual salt systems. And the very term, single salt system, doesn't make sense, because everything was a single salt system. And that what the argument that is being made is we discovered that when you use a pair of salts properly selected, you get a dramatic improvement in dynamic capacity. That is nowhere taught in the prior art. We didn't discover that these three pairs uniquely do that. We discovered that pairs of salts properly selected do that. And that's why the case was allowed. Then you go on to say that this particular use of salts has a, the way I read this, and I'm reading on 183, it's a vast improvement in the prior art. Why isn't that a strong disclaimer when you're? I'm not sure where in particular on 183. The first, at the end of the first paragraph, use of this particular combination of salt greatly improves the cost effectiveness, the commercial. So you're talking there about improving. I think you're right. That's a specific example that is being offered, if you will, as proof of unexpected results. And this is precisely the point that in the district court opinion, in its footnote it says, the magistrate judge read this in the way that your honor is positing, but I, the district court judge, do not read, do not think that's a fair reading of the inventor declaration. The district court then goes on to look at a different part of the prosecution, which is on appendix 162, and we think misreads that, where the part that says merely adding a second salt to the traditional Hick process doesn't produce our invention. But the district court disregards the immediately following sentence that says it's because you'd have too much salt and the protein would precipitate, not because the method is limited. It's the amount of salt, not the identity of the salt. And so in our view, looking at the prosecution of the 707 patent, it's just not a fair reading of it to say patentability was premised on these three pairs of salts. It was premised on the idea that the use of a pair of salts is not fairly taught in the prior art. Now, I see I'm, I think I, looking at my time, I'm not sure if I'm into my rebuttal time here. You've got a minute left of your rebuttal time. Let me pause at that point and we'll come back briefly. I'll restore you back to your two minutes when you come back. That is very generous, Your Honor. Counselor Junkowski. Yes, Your Honor. Thank you. Yes. Thank you, Your Honors. The district court correctly concluded that Amgen's claim under the Doctrine of Equivalence was barred for two independent reasons. First, the Doctrine of Argument-Based Prosecution History Estoppel. Second, the Disclosure of Dedication Doctrine. Looking specifically at the statements on pages 182 and 183, how do you respond to counsel's point about, well, first of all, let me ask you this. Do you think that the only sentence you really are focusing on is the one on page 182? I think it's the best sentence, but I think that when viewed in the entire context, other portions of the record amplify our argument. So, yeah, I think the best and clearest sentence is the sentence on 182. They actually say similar things a few times during prosecution, like that sentence or nearly identically worded sentences are repeated on a number of occasions in prosecution. But, yeah, I think that's ultimately the single best piece of evidence we have in the record. I was looking at pages 161 to 162 and page 160, and if it was just pages 160 through 162, I don't think there'd be a clear and unmistakable surrender. Do you agree with that? Yeah, I mean, I think that would be a harder case with just 160 and 162. I mean, I think that I'll be candid, 161, 162, I think presuppose that Amgen is only referring to the particular combinations, because if you look at what they say on 162, they talk about the lengthy development path necessary to determine what combinations of salts would increase the dynamic capacity, which I think presupposes here that what, you know, the inventive concept here is that they discovered that these particular combinations work. I don't think it would make sense to emphasize the lengthy development path to determine what combinations of salts work. But what if there was just a lengthy development path to determine what combination of salts work with those combination of salts being those that are in the specifications? Well, I mean, I think that, I'm sorry, can you repeat the question? Well, I mean, I'm just saying that you're talking about the lengthy development path, but I don't know that that's limited to just the proposed pairs, the combinations that are claimed. It also would include those that are disclosed in the specification, wouldn't it? Well, that's true. There was a lengthy development path to determine that the salts in the specification work, but those are the ones that are in the claim. I think it's notable, I don't mean to jump between arguments, but the examiner indicated earlier in the prosecution that the only combinations that were enabled by the specification were these four, three that are in this claim and one that issued as part of the parent patent. And those are the ones that ultimately showed up in the claim. So I think what, what Amgen is saying here is that there's a lot of development to determine that what combinations worked and they figured out that these four combinations worked and those are the combinations that ended up being claimed. And so I think that just 161 and 162 is fully consistent with their argument. But again, I think we have more here. I think we have the statement on page 182, which I think is pretty ambiguous. Ultimately Amgen made that statement. It's not a very long argument to the examiner and presumably Amgen, very sophisticated patentee, chose its words carefully. Amgen said that the particular combination of salts with the word particular italicized is not disclosed by Holtz. And I think that the public has a right to rely on that. And Amgen could have walked that back in its final amendment. It certainly didn't do that. And so I think that, you know, regardless of whether the examiner relied or not, I think that Amgen ultimately has the obligation to make a clear record. What do you think they would have had to do to walk that back? I mean, even if we think that in their, or even if I think that in their second response, they don't make a strong of an argument, what would they have had to do to undo strong argument that they made in their first response? I think they would have just had to say that, you know, our claim is not limited to the particular combinations of salts, or simply say we withdraw the statement that we're distinguishing the prior art on the basis that it does not disclose the particular combinations of salts with particular italicized. There's case law from this court that says once you make a statement during prosecution as clear as the one on page 182, you've got to withdraw it just as clearly rather than just leaving it in the record. I think that's actually particularly important here because although I don't think we need to show reliance, I think there actually is fairly abundant evidence in the record that that statement was necessary to get the patent. It wasn't sufficient in the sense that there was this rejection and a follow up argument, but it might have been necessary. And I think that the enablement rejection earlier in prosecution, which is on page 1153 of the joint appendix, I think is quite, quite strong in our favor. What, what the examiner is saying. So as originally drafted, the claim would have encompassed a combination of any two salts with different lyotropic values. And you'll see on pages 1153 and 54, the examiner rejects that and says that the claim is only enabled with respect to citrate, acetate, phosphate, and sulfate salts. The examiner says African has provided no guidance for any other salts, which would purify a protein. And then you'll see on 1154, the examiner actually lists the four combinations of salts. There's actually eight listed there, but each is listed twice. And so there's four combinations listed on page 1154. And at that point, Amgen stops prosecuting the generic claim and only prosecutes claims with respect to those four combinations. One was issued as part of the parent patent. And then the other three were issued as part of the patent we're talking about this morning. And so I think that if, if Amgen had been forthright and said, no, we're not limiting our claim to these particular combinations, there was a rejection risk. And that's why I think Amgen was so emphatic. It chose its words very carefully and said that the particular combinations, particular being italicized, were not disclosed. So if the court has no further questions, I'd like to say a word about disclosure dedication before I sit down. The court doesn't need to reach this question. If the court affirms on the basis of the argument-based estoppel, it's a completely independent argument for affirmance. But if I'll just say one word about it, I think that the disclosure does dedicate this to the public because the way the disclosure is written is that it includes a list of anions. And it's, it says there's a greater than sign between the two anions that are in the accused product. And it characterizes them as having different lyotropic values. Doesn't your enablement argument that you've just made, or the examiner's emphasis on enablement, doesn't that kind of undermine your position here? I mean, in that maybe it's not as clear as you say, that these are the particular salts that one would pick and that it's an alternative to what is in the claim. Well, first of all, I think these are alternative arguments, right? So if you affirm on estoppel, you don't have to reach this question. So I think that we talked about the enablement rejection just to make clear that the examiner wouldn't have granted the claim had there been forthright. But now when we just look at the specification, it does, it does name the two salts that we're talking about in that list. So it's not as though they're just generic salts that just happened to be salts with different lyotropic values. The two salts that are accused actually appear in the list that's in the disclosure and then the very next sentence. But they're not listed together as a particular combination. It's just a list of possible. That's right. So they're listed next to each other and there's a greater than sign. So that means not equal. And then the next sentence, it says that the present invention involves combining salts with different lyotropic values. So it's sort of splitting into two sentences, but I think it's saying that the present invention is broad enough to be used and that would have fallen within the original language of the claims. But Amgen narrowed its claims during prosecution to just these particular combinations. And so that's, I think it's just a classic case where we have the specification broader than what's claimed. And so the disclosure dedication doctrine applies. But again, I don't think the court needs to reach that if the court affirms on the first issue. If the court has no further questions. We thank you. Thank you. Your Honor, let me talk about the idea that the suggestion that Amgen should have walked back that language or withdrawn it. How would that have been possible? If Amgen is saying Holtz doesn't disclose any combinations, it's hardly going to say, but it does disclose these particular combinations. Those two are mutually inconsistent and that perfectly highlights why this isn't an independent argument, right? You can't walk back a subset of something if your premise is that the superset is wrong, right? And so that, it just shows you why this is all the gloss that's, the entire argument flows from plucking pieces out of the prosecution history and not looking at the whole of what was going on. I would just also point out on the enablement issue, the enablement rejection that counsel referred to was not a record below. It was added to the record here for this appeal. And if the court is interested, the response to that enablement rejection is that appendix 1163 to 1164. And it's where Amgen says, we disagree with the suggestion that the spec is only enabling for four specific pairs and here's why. It gives you a method for figuring out for each specific protein, which pairs of salts will work. And it's enabling for much more than these specific pairs. And lastly, on disclosure dedication, what I would say is that the APALE disregards the holdings of the Pfizer versus Teva and Sandisk versus Kingsdown cases that say the specification has to show the specific thing that's alleged to be, to have been dedicated as an alternative to the claim element. We know, and this traces its origin to the PSC case, that a generic disclosure is not enough. And Sandisk, which is the most recent presidential decision of this court on disclosure dedication says, the mere fact that a skilled person could take the teaching and arrive at the allegedly dedicated embodiment isn't sufficient for disclosure dedication. That's exactly what's going on here. There is no example in this patent that says, here's this particular pair of salts and it will work for increasing the dynamic capacity. And the last thing I would point out to the court is the specification makes clear the bottom of column 13 and the top of column 14. Not every pair of salts, even ones that have the required law tropic values will work to increase dynamic capacity. It shows two, it lists two that don't. So there would have to be a disclosure of this particular combination and then the failure to claim it. That's absent here. We thank you. We thank the parties for the arguments this morning. This court is now in recess.